# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN GONZALES, | Case No. 1:11-cv-01588-LJO-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| DR. GODWIN UGWUEZE, | (Doc. 23) |
| Defendant. | OBJECTION DEADLINE: TWENTY-FIVE DAYS |
| _____/ | |

**Findings and Recommendations on Defendant's Motion for Summary Judgment**

**I.    Background**

Plaintiff Steven Gonzales ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 20, 2011. This action is proceeding against Defendant Godwin Ugwueze ("Defendant") for acting with deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment of the United States Constitution.

On May 29, 2013, Defendant filed a motion for summary judgment. (Doc. 23.) Following the denial of Plaintiff's Federal Rule of Civil Procedure 56(d) motion on August 19, 2013, Plaintiff filed an opposition on September 9, 2013. (Docs. 29, 31.) After obtaining an extension of time, Defendant filed a reply on October 7, 2013, and his motion has been submitted upon the

record without oral argument.[1]  Local Rule 230(*l*).  (Docs. 33, 34.)  For the reasons set forth below, the Court recommends that Defendant's motion be granted on the ground that he did not act with deliberate indifference to Plaintiff's knee pain.

## II.     Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

1  credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.   Discussion

#### A.   Plaintiff's Claim[2]

Plaintiff is incarcerated at California Substance Abuse Treatment Facility and State Prison, Corcoran ("CSATF/SP"), where the events at issue occurred.  Plaintiff filed suit on September 20, 2011, alleging that in 2009, he underwent unsuccessful ACL reconstruction surgery which left him in debilitating pain.  Since that time, Plaintiff has used a knee brace to assist him with ambulation.

Plaintiff alleges that the pain medications prescribed for him offered him little to no relief, and on July 14, 2010, he discussed the issue with Defendant, his primary care physician.  While Plaintiff was describing the ineffectiveness of the pain medications, Defendant was reviewing his medical file.  Defendant became irate, and he told Plaintiff the medications were effective and "[P]laintiff was a junkie like the rest of them."  (Doc. 1, Comp., ¶10.)  Defendant told Plaintiff it was impossible for him to be experiencing the pain he described, and Defendant had Plaintiff leave the office.

Defendant noted in Plaintiff's medical chart that Plaintiff was "ambulating with normal gait and balance without use of assistive devices," and Plaintiff had "good functional level with

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

mild discomfort, secondary to intermittent complaint with medication for pain management." (*Id.*, ¶11.) Plaintiff alleges that the notes were false and that he believes they were made to thwart his ability to obtain adequate pain relief in the future.

Plaintiff alleges that five months prior to July 14, 2010, Defendant noted that Plaintiff suffered from ongoing pain and instability; and four months prior to July 14, 2010, Defendant noted that Plaintiff had a torn right ACL and was experiencing pain, and he referred Plaintiff for evaluation. The referral was returned to Defendant with Plaintiff's pain and immobilization noted.

Plaintiff alleges these events evidence Defendant's knowledge of his pain, to which Plaintiff claims Defendant was deliberately indifferent.

### B. Defendant's Undisputed Facts

1. Plaintiff has been incarcerated at CSATF/SP since 2005.

2. Defendant was a physician with the California Department of Corrections and Rehabilitation ("CDCR") at CSATF/SP at all times relevant to this action.

3. On December 2, 2009, Plaintiff was seen for consultation by Dr. Smith, an orthopedic surgeon, for a recurring injury to his right knee. Dr. Smith recommended a second opinion for Plaintiff's right knee in Fresno or Bakersfield.

4. Dr. Smith's recommendation did not note any pain or instability.[3]

5. Dr. Smith's recommendation did not prescribe or recommend pain medication nor did it note that Plaintiff's current pain management plan was insufficient.

6. On January 13, 2010, Defendant saw Plaintiff for evaluation of his right knee. Defendant noted that Plaintiff had a normal gait and normal balance at the usual walking pace, and Defendant observed no acute distress. Defendant requested a follow up with Plaintiff in thirty days.[4]

7. On January 13, 2010, Defendant reviewed the recommendations of Dr. Smith with

---

[3] Plaintiff attempts to bring this fact into dispute by arguing that the recommendation also omitted mention of other issues; and Plaintiff purports to dispute or partially dispute other undisputed facts proffered by Defendant on this same ground. Rather than address separately each subsequent fact which is affected by this objection, it suffices to note here that Plaintiff's desire to lend context or explanation to the proffered facts does not bring them into dispute.

[4] Although Plaintiff purports to dispute the description "usual walking pace" as undefined, Defendant is a licensed medical doctor and he is qualified to describe a patient as having a normal gait and normal balance at a usual walking pace. Fed. R. Civ. P. 56(d)(4); Fed. R. Evid. 702. Further, this issue is not ultimately material to the recommendation to grant Defendant's motion.

1  Plaintiff. Defendant agreed with Dr. Smith's recommendations and he recommended a second
2  surgical opinion. Defendant wrote a referral for a second surgical consult in Bakersfield,
3  California to the prison's Utilization Management Unit ("UM").
4  8. As a primary care physician, Defendant is responsible for referring patients to outside
5  services and specialists. Once Defendant makes a referral, the recommendation is reviewed and
6  approved or denied by the UM. In 2010, Defendant was not responsible for approving referrals to
7  outside specialists, and Defendant is not responsible for scheduling referrals or appointments once
8  the recommendation is approved.
9  9. On January 25, 2010, Plaintiff was seen by Dr. Amir, an orthopedist, in Bakersfield,
10  California for a second surgical consultation. Dr. Amir noted that Plaintiff's right ACL was
11  unstable and he recommended referral to a tertiary medical center, but he made no note of pain.
12  10. Dr. Amir did not prescribe or recommend stronger pain medication and Dr. Amir did not
13  note that Plaintiff's current pain management plan was insufficient.
14  11. Upon return from the orthopedic consult with Dr. Amir, Plaintiff was evaluated by medical
15  staff at CSATF/SP.
16  12. Defendant next saw Plaintiff on February 1, 2010, for follow up on his right knee.
17  Defendant noted that the secondary orthopedic opinion recommended referral to a tertiary medical
18  center.
19  13. On February 1, 2010, Defendant performed a physical examination and made physician
20  notes. Defendant noted that Plaintiff was able to ambulate with a supporting knee brace, and he
21  noted that Plaintiff's gait and balance were stable. Defendant noted that Plaintiff was not on pain
22  medications, and he noted that Plaintiff was experiencing pain at the end of the day. Defendant
23  prescribed Tylenol 650 mg. twice a day for Plaintiff.
24  14. On February 1, 2010, Defendant submitted a request for orthopedic consultation of
25  Plaintiff's right knee by a tertiary medical center as recommended by the secondary consultant.
26  On the referral request, Defendant noted that the Plaintiff's right ACL remained unstable with
27  mild pain. Defendant noted that the Plaintiff was using a knee brace to help with ambulation.
28  15. On March 22, 2010, Defendant re-submitted a request for orthopedic consultation of

1  Plaintiff's right knee to the UM.

2  16.     On April 13, 2010, Plaintiff was seen by Dr. Chandra for a consult. Dr. Chandra noted Plaintiff had pain and instability.  Dr. Chandra requested that Plaintiff be referred to a sports medicine-trained specialist.

5  17.     Dr. Chandra's recommendation did not include prescribing or recommending stronger pain medication nor did it indicate Plaintiff's current pain management plan was insufficient.

7  18.     On April 26, 2010, Defendant saw Plaintiff for follow up on his right knee.  Defendant performed a physical examination and made physician notes.  Defendant noted that Plaintiff's gait was stable, and he continued Plaintiff's prescription for Tylenol 650 mg. twice a day.

10 19.     On April 26, 2010, Defendant noted that Plaintiff was seen in Bakersfield by an orthopedic consultant.  Defendant followed up with the UM regarding the status of the referral for a sports medicine consultation via telephone.  Defendant requested a follow up with Plaintiff in thirty days.

13 20.     On June 14, 2010, Defendant saw Plaintiff for follow up.  Defendant noted that Plaintiff had received a right knee brace and orthopedic boots, and he noted that Plaintiff was still awaiting the sports medicine center consult.  Defendant performed a physical examination and noted that Plaintiff's knee was functionally stable when the brace was in place.  Defendant recommended continuation of Tylenol 650 mg.  Defendant requested a follow up appointment with Plaintiff in fourteen days.

19 21.     On June 14, 2010, Defendant requested follow up with the UM on the status of Plaintiff's referral for a tertiary sports medicine center consult.

21 22.     On July 14, 2010, Defendant saw Plaintiff for follow up evaluation. Defendant performed a clinical assessment, which included a physical assessment and a plan of care.  Defendant discussed the plan of care and pending referral to a tertiary center with Plaintiff.  Defendant noted that Plaintiff understood the plan of care but disagreed with it.  Plaintiff requested additional surgery on his right knee, and he objected to the referral to a tertiary medical center for consultation. Defendant explained to Plaintiff that for a surgical center to accept him and schedule

surgery, they must first evaluate him and make their own clinical judgment.[5]

23. On July 14, 2010, Defendant noted that Plaintiff's right knee was stable with the supplied supportive appliances, including the right-knee brace and orthopedic boots, in place. Defendant noted that Plaintiff attended the appointment without assistive devices, such as a cane or walker, and Defendant noted that Plaintiff was able to walk without the use of an assistive device, such as a cane or walker.[6] Defendant noted that the Plaintiff's functional level was good, and he noted that he observed mild discomfort. Defendant noted that Plaintiff was ambulating well and that his gait was steady, and he noted that he did not notice any limping, wobbling, or signs of pain while ambulating.[7] Defendant requested Plaintiff to follow up in sixty days, or after the orthopedic consultation.

24. On July 14, 2010, Defendant noted that Plaintiff was prescribed 650 mg. Tylenol. Defendant noted that Plaintiff reported that he was not taking his prescribed pain medication on a regular basis. Defendant increased Plaintiff's prescription for Tylenol 650 mg. from two times a day to three times a day, and he noted that Plaintiff requested opiate medication.[8]

---

[5] Although Plaintiff attempts to dispute this fact, the document he relies on is his inmate appeal grieving Defendant's refusal to discuss stronger pain medication with him and failure to adequately address his need for pain medication. While that issue is material and it is in dispute, that appeal does not bring into dispute this fact, which involves other issues addressed during the appointment.

[6] Plaintiff purports to dispute Defendant's definition of "assistive devices" by relying on a medical dictionary definition. However, there is no dispute that Plaintiff used a knee brace and orthopedic boots, identified by Defendant as "assistive devices," and that he was not relying on a cane or a walker, identified by Defendant as "assistive appliances." As a licensed medical doctor, Defendant is qualified to define a cane or a walker as an "assistive device" and a knee brace and orthopedic boots as "assistive appliances." Fed. R. Civ. P. 56(d)(4); Fed. R. Evid. 702; Doc. 23-5, Ugwueze Dec., ¶15. Furthermore, any dispute over the terminology of devices versus appliances is immaterial given the absence of any dispute between the parties regarding what devices and/or appliances Plaintiff had or did not have during that medical visit.

[7] Plaintiff purports to dispute the description of his gait, based on his need for a knee brace. However, Defendant does not dispute that Plaintiff was provided with a knee brace and orthopedic boots to stabilize his knee, that Plaintiff was subsequently provided with a cane, or that Plaintiff was ambulatory with the assistance of these items. Precisely how smooth or steady Plaintiff's gait was compared to an individual without any knee problems is not material and Defendant's description, made within the context of evaluating Plaintiff from a medical standpoint, is entitled to deference in the absence of any evidence refuting it. Fed. R. Civ. P. 56(d)(4); Fed. R. Evid. 702. Plaintiff may not create a disputed issue of fact merely by attacking the description, without supporting evidence demonstrating the existence of an actual, material dispute.

[8] While Plaintiff purports to dispute this fact, he relies on a medical record dated February 1, 2010, at which time Plaintiff was prescribed Tylenol 650 mg. bid (twice a day). (Def. Ex. B, pg. 8.) This fact is supported by a medical record dated July 14, 2010, in which Defendant prescribed Tylenol 650 mg. tid (three times a day). (Def. Ex. B, pg. 16.) Plaintiff's argument that the medication was to be taken as needed does create a factual dispute.

7

25.     Infrequent, or intermittent, use of prescribed medication is an objective indication of the severity and consistency of pain suffered by a patient.[9]

26.     The CDCR Pain Management Guide recommends the use of the World Health Organization "Analgesic Ladder." Under this approach, pain medication is divided into three categories: non-opioids (such as Tylenol), mild opioids, and stronger opioids. The "Analgesic Ladder" provides for the prescription of non-opioid medications first. The addition of stronger pain medications, or medications higher on the ladder, should only follow the failure of properly dosed medications lower on the ladder.

27.     Defendant determined that, based on the available clinical data, abandoning Tylenol for stronger opiate pain medication was not indicated. Plaintiff's knee was stabilized with the supplied brace and orthopedic boots. Plaintiff was ambulating well without assistive devices such as a cane or walker; and Plaintiff had a steady gait and was not limping or wobbling. Based on Defendant's training and experience, pain from a knee injury such as Plaintiff's can be successfully controlled by Tylenol, a knee brace, exercise, and physical therapy.[10]

28.     The American Academy of Neurology and the American Society of Physical Medicine and Rehabilitation recommend evaluation by a psychiatrist as part of a pain management plan because some psychiatric diagnoses manifest as, or exacerbate, pain symptoms. On July 14, 2010, Defendant also referred Plaintiff to a physiatrist for evaluation as part of his pain management plan.[11]

29.     On July 14, 2010, Defendant completed a CDCR form 128-C3 noting a right knee ligament injury requiring surgical evaluation by a tertiary center. Defendant approved a hinged

---

[9] Facts must be brought into dispute through citation to admissible evidence. Mere unsupported arguments and/or citations to inadmissible evidence do not suffice. Although Plaintiff argues that this fact is in dispute, he has not submitted any evidence bringing it into dispute. This fact addresses an objective indicator of pain in patients, not Plaintiff's subjective medical condition.

[10] Although Plaintiff states this fact is in dispute because Defendant is not an orthopedic surgeon, Defendant, as a licensed medical doctor, is qualified to render his opinion on the proper treatment of knee injuries.

[11] Plaintiff attempts to dispute this fact based solely on an argument that Defendant did not include a copy of the referral. However, Defendant set forth the fact in his declaration, and the referral record is found at page 16 of Defendant's Exhibit B.

knee brace for Plaintiff, and assigned him to limited duty.

30. On July 14, 2010, Defendant completed a CDCR form 7410 "Comprehensive Accommodation Chrono" approving a permanent bottom bunk, a permanent right knee brace, and a permanent cane for Plaintiff. Defendant requested Plaintiff to follow up in sixty days, or after the orthopedic consultation.

31. Defendant's July 14, 2010, physician notes were never used to justify the denial of pain medication by Defendant or any other health care provider at CSATF/SP.

32. On August 2, 2010, Plaintiff was seen by Dr. Robertson at the University of California San Diego for a tertiary medical center consultation. Dr. Robertson requested Plaintiff return with his knee brace for further evaluation. The tertiary medical center did not note pain or instability.[12]

33. On August 2, 2010, Plaintiff was evaluated by Nurse Davis when he returned to CSATF/SP.

34. On September 20, 2010, Plaintiff was seen again by Dr. Robertson at the UC San Diego orthopedic clinic. Dr. Robertson recommended continued treatment with an ACL brace and noted that the ACL brace was appropriate. Dr. Robertson recommended no further reconstruction, and physical training and quadriceps strengthening exercises. Dr. Robertson recommended that Plaintiff return for follow up if Plaintiff experienced "pain or new problems." Dr. Robertson did not note pain or instability.[13]

35. Neither of Dr. Robertson's consultation notes prescribed or recommended stronger pain medication, nor did Dr. Robertson's recommendations note that Plaintiff's current pain management plan was insufficient.

36. On September 20, 2010, Plaintiff was evaluated by CSATF/SP medical staff when he returned from the orthopedic consult. CSATF/SP medical staff noted no distress and noted that Plaintiff was stable and ambulatory.

---

[12] Plaintiff argues that his knee pain and instability were not discussed, but he does not cite to any evidence in support of his argument and notwithstanding that deficiency, there is no dispute that the consultant did not document pain or instability in the consultation findings. (Def. Ex. B, pg. 23.)

[13] Although Plaintiff purports to dispute this fact, he has submitted no evidence bringing into dispute Dr. Robertson's consultation findings and recommendations.

9

37. On November 9, 2010, Defendant saw Plaintiff for follow up treatment after the tertiary medical center consultation. Defendant reviewed the recommendations of the tertiary medical center with Plaintiff, and he noted that the tertiary medical center did not recommend further surgery. Defendant noted that Plaintiff had a stable gait and stable balance, and he noted that Plaintiff's knee brace was in place and well fitting. Defendant demonstrated quadriceps exercises to Plaintiff and encouraged him to perform the exercises many times during the day.

38. On January 19, 2011, Plaintiff was seen by Byers, a Physician Assistant, for a chrono renewal. Byers noted that Plaintiff was ambulatory with a steady gait, and Byers also noted that with knee brace in place, Plaintiff had a steady gait.

39. On February 7, 2011, CSATF/SP medical staff met with Plaintiff to respond to a health care services request form. Medical staff noted the Plaintiff's condition upon release back to his housing unit was stable and ambulatory.[14]

40. On February 17, 2011, CSATF/SP medical staff met with Plaintiff and completed a musculoskeletal complaint form. Medical staff noted the Plaintiff ambulated with a strong and steady gait with a cane, and his condition upon release back to his housing unit was stable and ambulatory. It was noted that Plaintiff declined any other OTC (over the counter) medications as ineffective. It was recommended that Plaintiff continue his current medication.[15]

41. On March 18, 2011, CSATF/SP medical staff met with Plaintiff and completed a musculoskeletal complaint form. Medical staff noted that Plaintiff was on acetaminophen (Tylenol) and refused any more OTC medications. It was noted that Plaintiff ambulated with a straight and steady gait.

    **C.**    **Plaintiff's Undisputed Facts**[16]

1. On February 1, 2010, Defendant submitted a Physician Request for Services form in which

---

[14] This fact is supported by the medical record on page 29 of Exhibit. While Defendant's citation to the record was incorrect, there is no evidence controverting the fact.

[15] Plaintiff asserts this fact is disputed. While Defendant's citation to the record is incorrect, which is the basis for Plaintiff's purported dispute, the medical recorded supporting this fact may be found on page 30 of Exhibit B.

[16] Proffered facts which are irrelevant, such as other lawsuits involving Defendant, have been omitted.

1  he noted that Plaintiff's knee gave way, and Plaintiff had pain and instability.

2  2.      Plaintiff knee is supported by a hinged knee brace.[17]

3  3.      On July 29, 2010, Plaintiff filed an inmate appeal in which he complained about his July 14, 2010, medical appointment with Defendant and stated that he informed Defendant that Tylenol was ineffective and his pain level was a constant 6.[18]

6  4.      During his medical appointment with Defendant on July 14, 2010, Plaintiff was wearing his orthotic braces to assist his mobility, balance, and stability.

8  5.      Plaintiff's knee can be stabilized with a brace and orthotic boots.

9  6.      Defendant is not a board certified orthopedic surgeon. His specialty is internal medicine.[19]

10 7.      Plaintiff had arthroscopic surgery on his right knee on September 9, 2003.

11 8.      Plaintiff had another arthroscopic surgery on his right knee on January 9, 2007.

12 9.      Plaintiff underwent another procedure on his right knee on October 9, 2007.

13 10.     Plaintiff underwent ACL reconstruction surgery on his right knee at Corcoran District Hospital on April 10, 2008.

15 11.     On November 1, 2011, Plaintiff underwent a lumbar spine MRI without contrast, resulting in the following findings in part: Plaintiff has loss of normal disc hydration and space height, and Plaintiff has disc extrusion causing marked narrowing of the right lateral recess and right neural foramina with probable impingement of right exiting nerve roots.

19 12.     Defendant ordered another hinged knee brace for Plaintiff on July 14, 2010.

20 13.     There are other medications which are stronger than Tylenol but not as strong as morphine, such as methocarbamol or ketorolac tromethamine.[20]

---

[17] Although Defendant purports to dispute this fact in part, he has cited to no evidence converting the medical record offered by Plaintiff in support of his statement that his knee was supported by a hinged knee brace. (Pl. Ex. B.)

[18] Defendant's hearsay objection is overruled. The statement in the appeal is offered as evidence not of the truth of the matter asserted but that Defendant was placed on notice on July 14, 2010, of Plaintiff's complaint of pain and dissatisfaction with Tylenol.

[19] Defendant's hearsay objection is overruled. Fed. R. Civ. P. 801(d)(2)((A). Furthermore, Defendant does not dispute the fact. The Court expects the parties to refrain from burdening it with unnecessary objections.

[20] Defendant is correct that Plaintiff may not offer his lay opinion on medical issues which request expertise. Fed. R. Evid. 701, 702. However, Defendant does not dispute this fact and his declaration supports the existence of a hierarchy of medications.

14.  Plaintiff now takes Ultram for back and right knee pain. Defendant did not prescribe Ultram for Plaintiff.[21]

15.  Ultram is stronger than Tylenol but not as strong as opiate medication.[22]

16.  During Plaintiff's appointment with Defendant on July 14, 2010, Defendant had Plaintiff's Unit Health Record.

17.  Plaintiff had a medical consultation appointment with Dr. David Smith on August 17, 2011. During the consultation, it was noted that Plaintiff was still experiencing pain in his knee.

18.  Plaintiff has a history of chronic knee problems, and he has been complaining to other medical staff of severe knee pain, as well as hip and low back pain.

19.  There have been times when Plaintiff was not prescribed any pain medication.

21.  On February 1, 2010, Defendant noted that Plaintiff's knee was unstable and he had pain.

22.  Plaintiff's knee injury is chronic.

23.  Under State of California Prison Health Care Services, Pain Management Guidelines, treatment options for chronic pain are identified as nonpharmacologic therapies, non-opioid analgesics, adjuvant medication, and opioids.

24.  Pain is not just a response to tissue damage but also includes emotional and behavioral responses based on the individual's past education, experiences, and perceptions of pain. Human responses to pain reflect cultural expectations and psychological predisposition.

**D.    Legal Standard**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v.*

---

[21] Defendant does not actually dispute this fact and his objection is overruled. A lay person is competent to identify what prescription medications he takes and for what, and to state that he was not prescribed a particular medication by a doctor. Fed. R. Evid. 701. Plaintiff's statement does not impermissibly stray into territory reserved for expert witnesses. Fed. R. Evid. 702.

[22] This fact strays closer to subject matter requiring an expert opinion, but the Court is not persuaded that a lay person with a chronic medical issue that caused pain and for which he received pain medication would not know that Ultram is stronger than Tylenol but not as strong as morphine. Regardless, there is no legitimate dispute over this fact nor is this fact ultimately material.

*Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Defendant does not argue that Plaintiff's knee condition did not present an objectively serious medical need and therefore, the Court's focus is limited to whether Defendant acted with deliberate indifference to Plaintiff's knee condition, specifically Plaintiff's complaint that the pain medication prescribed was inadequate.

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

**E.     Findings**

Plaintiff's claim against Defendant arises out of Plaintiff's disagreement with the course of

13

treatment prescribed by Defendant on July 14, 2010, to address Plaintiff's complaint of continued knee pain.[23]  A mere difference of opinion between Plaintiff and Defendant regarding medical treatment does not give rise to a claim under section 1983.  *Snow*, 681 F.3d at 987-88; *Wilhelm*, 680 F.3d at 1122-23; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); *accord Snow*, 681 F.3d at 987-88.

Plaintiff has a history of right knee surgeries and he has chronic problems with his knee, including pain and issues with stability.  However, Plaintiff's knee was stabilized with the use of a hinged knee brace and orthotic boots, and he was able to ambulate with the assistance of those devices.  When Defendant saw Plaintiff on July 14, 2010, Plaintiff had a prescription for Tylenol 625 mg. twice a day, as needed.[24]  Plaintiff told Defendant he usually needed pain medication at night right before he went to sleep and he complained that the Tylenol prescription was ineffective.  Defendant increased the dosage to three times a day, as needed.  Defendant also ordered another hinged knee brace, a cane, a lower bunk assignment, and a light duty assignment.  At that time, Plaintiff had already been evaluated at the prison's orthopedic clinic by Dr. Smith and by Dr. Amir and Dr. Chandra, both of whom were outside orthopedic specialists.  None of the orthopedists had recommended additional or different pain medications.

Plaintiff was subsequently seen twice by an orthopedist specializing in sports medicine, a consult which was recommended by Dr. Chandra.  Plaintiff was first seen by that specialist, Dr. Robertson, on August 2, 2010, and the resulting recommended plan of care was a steroid injection,

---

[23] The parties do not dispute that at times Plaintiff was not on pain medication.  However, the record submitted by Plaintiff in support of his undisputed fact 19 concerns a medical appointment which occurred on July 19, 2011, and Plaintiff's claim arises out of Defendant's failure to provide him with adequate pain medication in response to his complaint about the ineffectiveness of Tylenol on July 14, 2010, rather than from a failure to prescribe any pain medication or from a discontinuation of medication.  (Pl. Ex. L.)  Notwithstanding the main focus on the appointment of July 14, 2010, Plaintiff's medical records demonstrate that he received medical treatment for his knee issue before and after July 14, 2010.

[24] Defendant's outpatient interdisciplinary progress notes dated February 1, 2010, document that Plaintiff was having pain toward the end of the day and he was not on pain medication.  (Def. Ex. A, p. 8.)  At that time, Defendant prescribed Tylenol 625 mg. twice a day.  (*Id.*)

use of anti-inflammatories, and a follow up appointment for Plaintiff with his knee brace. (Def. Ex. A, pg. 21.) Plaintiff was subsequently seen by Dr. Robertson, with his knee brace, on September 20, 2010, at which time Dr. Robertson recommended "continue[d] conservative treatment" with a knee brace and ACE wraps for padding as needed. (*Id.*, pg. 23.) Dr. Robertson did not recommend repeat surgery for Plaintiff nor did she recommend any changes to Plaintiff's pain medication protocol. (*Id.*)

With respect to treatment of Plaintiff's knee pain by Defendant, Defendant submits evidence that under the World Health Organization's "Analgesic Ladder" utilized by CDCR, the use of non-opioid medications such as Tylenol precedes the use of stronger pain medications higher on the ladder, and stronger pain medications should be used only following the failure of properly dosed lower-ladder medications. In response to Plaintiff's complaint that the Tylenol 625 mg. twice a day was ineffective, Defendant increased the frequency of the medication from two times a day to three times a day, and he attests that in his medical opinion, the pain from Plaintiff's knee injury could successfully be treated with Tylenol, a knee brace, exercise, and physical therapy.

While Plaintiff attests that he now takes Ultram, which is a stronger pain medication, that fact does not raise a triable issue of fact regarding the propriety of Defendant's chosen course of treatment in 2010.[25] *See Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)) (difference of opinion between medical professionals does not amount to deliberate indifference). Accepting as true that Plaintiff wanted to discuss being prescribed stronger pain medication during the appointment on July 14, 2010, but Defendant confined the discussion to Plaintiff's current pain management plan, focused opioid medication, and accused Plaintiff of being a junkie, Plaintiff's desire for a stronger pain medication and his belief that he should have

---

[25] Plaintiff's declaration does not set forth when he was prescribed Ultram. (Pl. Ex. I, Gonzales Dec., ¶12.) However, a medical record submitted by Plaintiff documents that approximately one year later – on July 19, 2011 - Plaintiff was not taking any medication. (Pl. Ex. L.) The physician, Dr. Nyenke, noted that Plaintiff had been on Tylenol No. 3 in the past and Plaintiff claimed it was ineffective. (*Id.*) Dr. Nyenke started Plaintiff on Tylenol twice a day and noted his concern regarding Plaintiff's "very calculated manner, almost threatening" regarding wanting Tramadol and to be followed by an orthopedic surgeon. (*Id.*) Dr. Nyenke specifically noted that an orthopedic surgeon who had evaluated Plaintiff had not recommended narcotics for Plaintiff, and Dr. Nyenke declined to send Plaintiff to the narcotics committee in light of Plaintiff's desire to be reevaluated again by orthopedic surgeons. (*Id.*)

been prescribed something else on July 14, 2010, do not suffice to create a triable issue of fact regarding whether Defendant's failure to prescribe a stronger medication rose to the level of deliberate indifference.[26]

Defendant has met his burden of setting forth evidence demonstrating that the course of treatment he chose was medically acceptable under the circumstances. This shifts the burden to Plaintiff to submit admissible evidence showing that the course of treatment chosen by Defendant was medically unacceptable and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff has not done so.

As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have considered other classes or types of pain medication on July 14, 2010, and that Defendant's failure to do so was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. Although the parties disagree regarding the extent of Plaintiff's knee pain, that dispute does not create a triable issue of fact in the face of Defendant's uncontroverted evidence that in his opinion, increasing Plaintiff's Tylenol prescription was a medically appropriate response to Plaintiff's complaints of continued knee pain and that prescribing a different, stronger medication was not indicated at that time.

In sum, the record demonstrates that Plaintiff's complaints regarding his knee were repeatedly and appropriately addressed by prison medical staff, including Defendant. Plaintiff's mere disagreement with the course of treatment chosen by Defendant does not support a claim under the Eighth Amendment, and Defendant is entitled to summary judgment. *Snow*, 681 F.3d 987-88.

**IV.    Conclusion and Recommendation**

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment, filed on May 29, 2013, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District

---

[26] Defendant's objection to Plaintiff's attestation that Defendant called him a junkie, set forth in Defendant's reply, is overruled. Defendant's statement, offered by Plaintiff against Defendant, is not hearsay, and Defendant's attempt to import an additional requirement of reliability into Rule 801(d)(2)(A) is unsupported. Fed. R. Evid. 801(d)(2)(A).

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-five (25) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within **ten (10) days** from the date of service of the objections. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 21, 2014**          /s/ Sheila K. Oberto
                                    UNITED STATES MAGISTRATE JUDGE